an impacted fracture. The boy was seven weeks in the hospital, and confined to bed three weeks afterwards, under constant treatment, and there is a shortening of the leg.

I think the judgment and order should be affirmed, with costs.

LAUGHLIN, J., concurs.

---

### In re LAWRENCE'S ESTATE.

(Supreme Court, Appellate Division, First Department. June 24, 1904.)

1. TRANSFER TAX LAW—APPRAISEMENT—FINALITY—SUBSEQUENT APPRAISEMENT.

Where an appraiser appointed to fix the transfer tax reported that the value of the life interests of devisees could not at that time be ascertained, and that the remaindermen were indefinite and uncertain, and the tax could not then be determined, which report was confirmed by the surrogate, there was no authority for appointing another appraiser; there having been in the meantime no change in the estate or condition of affairs, except that income had been paid to the life tenants under the provisions of the will.

Appeal from Surrogate's Court, New York County.

In the matter of the transfer tax on the estate of Joseph J. Lawrence, deceased. Appeal from an order fixing the transfer tax. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

George W. Van Slyck, for appellants.
Emmet R. Olcott, for respondent.

McLAUGHLIN, J. On the 7th of December, 1893, Joseph J. Lawrence, a resident of the county of New York, died, leaving a last will and testament, which was thereafter admitted to probate, and letters testamentary issued to the executor therein named. By the third clause of his will he gave to his executor in trust the sum of $30,000, to invest and pay the income therefrom to his stepdaughter, Ethel King Hepburn, so long as she should live, or until she married, and thereafter directed that the principal sum should become part of the residue of his estate, to be disposed of as provided in the residuary clause of his will. The residue of his estate he disposed of as follows: He gave the same to his executor in trust to invest and keep the same invested, and to pay over the income therefrom to his daughters Nanine, Sarah, and Josephine, share and share alike, until his daughter Josephine should attain the age of 35 years, or until her death, should she die before attaining such age, and, in the event of the death of either of the daughters Nanine or Sarah during such period, leaving issue, the income to which the daughter would have been entitled, had she lived, was to be paid over to her lawful issue. He further directed, if during any year of said period the income from said property should be less than $12,000, then the executor was empowered and directed to apply and pay so much of the principal as would make the

net income equal to that sum, and, upon the daughter Josephine arriving at the age of 35 years, or upon her death before attaining that age, the trust should terminate, and the principal sum thereupon be divided among said three daughters, share and share alike, and, if any of them had died prior to that time leaving issue, the issue should take the share which the parent would have taken if living, and, in case they died without issue, then the principal sum should be divided among the survivors.

In March, 1894, an appraiser was appointed for the purpose of fixing the transfer upon the estate of the intestate, and in June of the same year he filed a report in which he found that the residuary estate amounted to $299,092.29, but that the value of the life interest of the daughters therein could not at that time be ascertained, and the remaindermen were indefinite and uncertain, and the tax could not then be determined. He also made a similar finding as to the $30,000 given in trust to the stepdaughter. This report was on the 22d day of June, 1894, confirmed by an order of the Surrogate's Court of the county of New York. On the 16th of November, 1898, another appraiser was appointed to ascertain and fix the tax on such estate, and on the 27th of February, 1901, he made a report that "no evidence had been presented  *  *  *  showing that the deceased left any property within the state of New York subject to the transfer tax." It does not appear that any order was ever made confirming this report, but it does appear that on the 27th of December of the same year another appraiser was appointed for the purpose of determining and fixing the transfer tax on said estate, and on the 22d of April, 1903, he made a report in which he found that the income paid to the stepdaughter and the three daughters from the date of the testator's death to the time the report was made was subject to a tax of 1 per cent. This report was subsequently confirmed by an order of the Surrogate's Court, in so far as it imposed a tax on such income from the death of the testator to the institution of the proceeding to determine the tax, and it is from this order that the present appeal is taken.

The order appealed from must be reversed. The report made by the first appraiser, which was confirmed by an order of the Surrogate's Court, precludes subsequent action to determine and fix the transfer tax until the happening of one or the other of the events specified which terminates such trust estates. The situation now is precisely what it was when that order was made, except the amount of income paid, and the right to assess the transfer tax manifestly does not depend upon this. Matter of Sloane's Estate, 154 N. Y. 109, 47 N. E. 978. That order is, in effect, a final determination of the subject, and is effectually binding—there being no change in the estate—upon the Comptroller and the executor, so long as it remains in force. This order was not appealed from. It is the law applicable to the question presented, and the Comptroller can no more avoid its effect than can the executor and trustee named in the will. It is binding upon both equally, and cannot be avoided by instituting a new proceeding, and thereby getting another referee to make a different report. If this could be done, it is not difficult to see that a trustee under a will similar to this one might be subjected to a large per-

sonal liability (sections 3, 4, c. 399, pp. 815, 816, Laws 1892), even though he strictly obeyed the order of the Surrogate's Court.

The order appealed from, therefore, must be reversed, with $10 costs and disbursements, and the motion to confirm the referee's report denied, with $10 costs. All concur.

